## In re BALDWIN LOCOMOTIVE WORKS.

### No. 18519.

District Court, E. D. Pennsylvania.

Oct. 10, 1941.

Gerald A. Gleeson, of Philadelphia, Pa., for petitioner.

Bernard A. Illoway, of Illoway & Fischer, of Philadelphia, Pa., for respondent Arnold Bernhard.

A. Allen Woodruff, of Morgan, Lewis & Bockius, of Philadelphia, Pa., for Baldwin Locomotive Works.

BARD, District Judge.

This matter came before the court on the petition of a member of a bondholders' protective committee and on a rule granted on the chairman of the committee and the Baldwin Locomotive Works to show cause why an order of this Court, entered August 17, 1938, in proceedings for the reorganization of the Baldwin Company should not be executed in a specified manner.

By the order of August 17, 1938, the Baldwin Company was required to pay to the committee the sum of $31,213.33. Of this, $30,000 was for compensation and the balance for expenses. The order was in response to a petition for allowance to the committee of compensation and expenses. In the order all five of the committee members were named. The Baldwin Company issued a check for the full amount to Arnold Bernhard, as chairman of the committee, who deposited it in that capacity.

By agreement of a majority of the committee members during the petitioner's absence and without his consent, a certain distribution of the $30,000 fund was decided upon. The chairman was to receive $18,000, the secretary $7,500, and each of the three remaining members $1,500. The petitioner refused to accept $1,500 as his share, contending that, in the absence of a contrary court provision, he was entitled to a one-fifth share or $6,000.

In my opinion of December 2, 1940, D. C., 35 F.Supp. 773, I stated that it was my conclusion that an equitable distribution of the compensation was intended and that, to determine such distribution, both sides should be allowed to present evidence at a

stated time. A hearing was subsequently held, during which the contributions of the members of the committee, particularly the petitioner and the chairman, to its work were gone into in considerable detail. Upon the basis of the evidence then adduced, I make the following findings of fact:

1. That Baldwin Locomotive Works filed petition for reorganization under 77B, 11 U.S.C.A. § 207, on February 25, 1935, and on the same day an order was entered, and later affirmed, continuing debtor in possession.

2. On or about April 5, 1935, an independent protective committee for the holders of the Baldwin Locomotive Works 6% Consolidated Mortgage Bonds due 1938 was formed with Arnold Bernhard as chairman, Samuel Wieder as secretary, both residents of the state of New York, and the Honorable A. Demorest Del Mar, a resident of New Jersey, Hugh W. MacNair, a resident of New York, and J. W. Woodruff, a resident of Georgia, as other members.

3. This committee began regular meetings in New York City on May 8, 1935, and functioned until early in August of 1935 when the final plan of reorganization was approved, after which no further meetings of a majority of the committee were held.

4. Records of the proceedings at the various meetings were destroyed by the secretary some time after the committee's work was completed and meetings were discontinued.

5. The petitioner's prominence in his community and consequent facilitation of the acquisition of support of the numerous holders of the bonds in that area was an important consideration in selection of him for membership in the committee.

6. It was agreed among the members that the majority should determine matters arising in the committee's work.

7. The petitioner was not aware of and did not participate in any agreement that the majority should determine the division of any compensation awarded.

8. The petitioner stated, during the course of the committee's work, that he felt the chairman's compensation should be commensurate with the proportion of work done by the latter.

9. The committee met approximately twelve times.

10. The petitioner attended at least eight of the meetings.

11. The committee meetings were for the purposes of considering and acting upon matters pertaining to the reorganization and of considering and acting upon reports and proposals of the chairman, who was actively engaged in tasks incident to the committee's work during the time it functioned.

12. The committee meetings frequently consumed an entire afternoon.

13. The chairman consulted the petitioner by telephone and otherwise numerous times concerning the work of the committee and concerning problems arising in conjunction therewith, evidently resorting more often to the petitioner for advice and assistance than to any other member of the committee.

14. The petitioner spent several days' time privately studying and considering the matters confronting the committee.

15. The petitioner communicated with over 420 New Jersey banks in an effort to gain support for the committee.

16. The petitioner endeavored to procure a purchaser for certain vacant real estate of the Baldwin Company, consulting brokers in an effort to locate a purchaser.

17. The petitioner attended a joint meeting of all committees in connection with the Baldwin reorganization.

18. The chairman was the active leader in and director of the committee's activities. During the period of the committee activity the chairman devoted a major portion of his time to the affairs of the committee. He actively directed these affairs and served as the committee's source of contact with the Baldwin Works, the other committees, members who failed to attend particular meetings, and the development of various plans for reorganization of the Baldwin Works.

19. The chairman carried on considerable correspondence concerning the reorganization and engaged in considerable research and study in connection with his work with the committee. Employees in the chairman's business office assisted in analyses of the Baldwin Works' financial structure and related problems.

20. Woodruff was selected because of his prominence in his community and because of his ownership of bonds. He attended no meetings. He corresponded infrequently with the chairman concerning committee affairs. He gave assistance in procurement of a small number of bondholders to support the committee. He was regarded as in accord with any decision or conclusion of the chairman.

21. MacNair was selected for service on the committee because prominent in a corporation of the chairman's community and because of ownership of some and control over other bonds. He attended six or eight meetings, consulted with the chairman on various occasions, and cooperated generally in the committee's work.

22. Wieder was not selected as secretary for any particular reason, but rather was made a member at the insistence of a party interested in the formation and functioning of the committee. He kept brief records of its meetings and of correspondence with bondholders. He carried on routine correspondence with bondholders, devoting a considerable but not a major portion of his time to such. The chairman carried on the correspondence with other interested parties concerning the detailed proposals for and problems of reorganization.

23. The distribution of compensation was decided upon early in August, 1938, by the chairman and the secretary, without any discussion or deliberation by a regularly convened committee meeting.

24. MacNair and Woodruff agreed over the telephone to the distribution decided upon by the chairman and secretary.

25. The petitioner expressed dissatisfaction when advised by letter August 15, 1938, of the share allotted him. He refused to accept a check for that share, dated August 25, 1938.

26. The instant action was instituted March 15, 1940.

### Discussion.

The concern of the Court in the instant matter is whether, as regards the petitioner, an equitable distribution was made of the compensation awarded the committee. I am not concerned with the propriety of the shares agreed upon and accepted by MacNair and Woodruff or of those allotted themselves by the chairman and secretary, except insofar as necessary to ascertain the amount equitably due to the petitioner. In view of the fact that all other members of the committee concurred in the distribution, I conclude that there is no basis for complaint by any of them in that regard.

■ Though a majority vote of the committee necessarily had to govern in its deliberations, if any progress was to be made, this should not be carried so far as to permit the majority to deprive the minority of any compensation. Thus, unless the minority consented to such a method of division of compensation, it cannot govern. In this instance, the petitioner did not so consent.

If consonant with equity, the determination of the majority could be left undisturbed. However, it is my conclusion that the instant division was not equitable. Therefore, I am decided that the petitioner is entitled to a determination by this Court of his proper share.

The petitioner's presence on the committee, in itself, served to enable the committee to gain support among the numerous bondholders in his community. This was an admitted reason for his selection, along with the reason that his prominent public position was indicated on the committee's letterheads. During the life of the committee the petitioner devoted himself to attendance at a majority of the meetings, to study of and frequent consultation over its business, and to executing certain other tasks in furtherance of the committee's work as heretofore set forth.

The chairman's services patently were far greater than those of the others. They required much more of his time, demanded more continual concentration on committee affairs, and consequently detracted considerably from his devotion to his own business.

According to the evidence, the other members of the committee, with the exception of Wieder, the secretary, did not perform more than perfunctory service. Woodruff, who resided in Georgia, did not attend a single meeting of the committee, did not concern himself particularly with the committee's work and assisted but slightly in efforts to gain support for the committee. MacNair attended several of the meetings and was consulted frequently as to his position on various committee matters. Nothing further appears relative to his services. Wieder, the secretary, handled the routine correspondence of the committee, kept a general record of its deliberations, and participated in its meetings. The considerable disparity between his share of the compensation and those of Del Mar and MacNair is not justified by the evidence.

In light of the evidence, reason and conscience require the conclusion that the share allotted to the petitioner was insufficient. I am decided that he was not required to accept the division made by the majority and that the chairman was not warranted in making a distribution as he did.

■ Petitioner did not lull the chairman and the other members into a sense of security. He immediately professed dissatisfaction with the share allotted him and has not indicated any change in his attitude concerning the same. Bernhard, in distributing the balance of the compensation, acted with full knowledge that the petitioner was not in accord with the determination made by Bernhard and Wieder and later approved by MacNair and Woodruff.

■ The petitioner is entitled to a payment of four thousand dollars from Arnold Bernhard.

### Conclusions of Law.

■ 1. This court has jurisdiction and the discretionary power to determine and decree an equitable distribution of the compensation awarded by it.

2. The majority of the committee was not authorized to determine the division of the compensation.

■ 3. The petitioner is entitled to a share of the compensation commensurate with his contribution to the services for which the compensation was awarded to the committee.

■ 4. Determination of proper division of compensation is dependent upon contributions of judgment, experience, prestige, and other factors, as well as time devoted to the committee's work.

5. The division of compensation decided upon by the committee's majority is inequitable.

6. The chairman was not warranted in distributing the compensation against the objection of the petitioner.

7. The petitioner is not barred from obtaining relief by his failure heretofore to institute judicial proceedings.

8. The petitioner is entitled to a payment of four thousand dollars from Arnold Bernhard.

9. The costs shall be divided between Arnold Bernhard and the petitioner.

The requested findings of fact and conclusions of law are affirmed insofar as consistent herewith and denied insofar as inconsistent herewith.

### Note.

In making the above findings of fact and conclusions of law I am not ordering a redistribution of the fund nor determining whether the other three members of the committee received an equitable share. The only question before the Court was to determine to what portion of the $30,000 the petitioner Del Mar is equitably entitled. Since Bernhard, the chairman, received the full $30,000, I directed that he should pay the $4,000 to the petitioner. If the petitioner is unable to collect any portion of this from Bernhard, I will determine the responsibility, if any, of the Baldwin Company.